KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
DARALYN J. DURIE - #169825
LLOYD A. FARNHAM - #202231
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
321 STUDIOS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C 02 1955

| | |
|---|---|
| 321 STUDIOS, also known as 321 Studio, LLC<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC.; TRISTAR PICTURES, INC.; COLUMBIA PICTURES INDUSTRIES, INC.; SONY PICTURES ENTERTAINMENT, INC.; TIME WARNER ENTERTAINMENT COMPANY L.P.; DISNEY ENTERPRISES, INC.; UNIVERSAL CITY STUDIOS, INC.; THE SAUL ZAENTZ COMPANY; and PIXAR,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This lawsuit involves the ability of a small Internet company to market and sell an instruction manual and bundled computer software that teaches legal owners of DVD movies how to make legitimate backup copies of the contents of a DVD for their own personal use. 321 Studios' package, called "DVD Copy Plus," includes an effective and easy-to-use method of

1
COMPLAINT FOR DECLARATORY RELIEF

288502.02

transferring the digital video images from a DVD onto regular CD-ROMs, permitting the DVD owner to make backup copies of a DVD.

2. The Defendants in this action, either individually or under the auspices of the Motion Picture Association of America (the "MPAA"), have claimed that 321 Studios' DVD Copy Plus is illegal under the Digital Millennium Copyright Act—an assertion that is both legally and factually incorrect. By making these allegations and threatening litigation to stop the sale of DVD Copy Plus, the Defendants and the MPAA seek to destroy a legitimate business, and to impinge upon 321 Studios' First Amendment rights. In this action, 321 Studios asks the Court to confirm its right to distribute and sell DVD Copy Plus, seeking a declaratory judgment that 321 Studios is not violating the provisions of the Digital Millennium Copyright Act ("DMCA"), that it is not contributorily infringing any copyright in video works stored in the DVD format, and that its activities are protected under the First Amendment.

3. This lawsuit presents important questions about the interpretation of the Digital Millennium Copyright Act and its interaction with United States copyright law and the First Amendment. The so-called "anti-circumvention" and "anti-trafficking" provisions of the DMCA have been widely criticized by legal scholars and computer industry experts. Because the potential reach of this new legal scheme is unclear, and because the Defendants claim that 321 Studios violates this untested provision of copyright law, declaratory judgment by this Court is necessary to preserve the legitimate right of 321 Studios to market and sell DVD Copy Plus, and to preserve the legitimate rights of DVD owners to make backup archival copies of their own DVDs.

**THE PARTIES**

4. Plaintiff 321 Studios is the business name for 321 Studio, LLC, a Nevada corporation. 321 Studio, LLC is doing business as 321 Studios, and also does business as "www.321studios.com," "www.copymydvd.com," and "www.dvdcopyplus.com." 321 Studios maintains an office in Berkeley, California, located in the Northern District of California, and conducts sales and marketing activities in the Northern District of California. 321 Studios sells DVD Copy Plus to customers in the Northern District of California.

5. Based on information and belief, the named Defendants are motion picture companies engaged in the business of producing and distributing motion pictures. Each of these Defendants distributes motion pictures in theaters, on television, on videocassette tapes, and on digital media such as DVDs. Based on information and belief, each of the named Defendants owns exclusive rights in the copyrights of motion picture and video materials it produces and distributes.

6. Defendant Metro-Goldwyn-Mayer Studios Inc. is a motion picture production company with its principal place of business in Santa Monica, California.

7. Defendant Tristar Pictures, Inc. is a motion picture production company with its principal place of business in Culver City, California.

8. Defendant Columbia Pictures Industries, Inc. is a motion picture production company with its principal place of business in Culver City, California.

9. Defendant Sony Pictures Entertainment, Inc. is a motion picture production company with its principal place of business in Culver City, California.

10. Time Warner Entertainment Company L.P. is a motion picture production company with its principal place of business in New York, New York.

11. Defendant Disney Enterprises, Inc. is a motion picture production company with its principal place of business in Burbank, California.

12. Defendant Universal City Studios, Inc. is a motion picture production company with its principal place of business in Universal City, California.

13. Defendant The Saul Zaentz Company is a motion picture production company with its principal place of business in Berkeley, California, in the Northern District of California.

14. Defendant Pixar is a motion picture production company with its principal place of business in Emeryville, California, in the Northern District of California.

**VENUE AND JURISDICTION**

15. Jurisdiction is proper in this Court because this litigation arises under federal law, namely 17 U.S.C. Section 101 et seq. (United States Copyright Code). The Court has

jurisdiction over this action under 28 U.S.C. Section 1331 (federal question), 28 U.S.C. Section 1338(a) (copyright), and 28 U.S.C. Section 2201 (declaratory judgment).

16. This Court has personal jurisdiction over each Defendant because each Defendant resides or has its principal place of business in the State of California, distributes its motion pictures and other video works in California, and/or has substantial contacts with California.

17. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) and 28 U.S.C. Section 1400(a) because (1) all of the Defendants legally reside in this district under 28 U.S.C. 1391(c), (2) this is a judicial district in which some of the Defendants reside and maintain a principle place of business, and/or (3) 321 Studios maintains a business office in the Northern District of California.

18. A substantial part of the events which give rise to this controversy occurred in Alameda County. Plaintiff 321 Studio's sales office is in Berkeley, California.

19. A actual case or controversy has arisen between the parties. The Defendants, either individually or under the auspices of the MPAA, have threatened litigation against Plaintiff and have asserted that DVD Copy Plus is illegal. These statements have caused actual and/or threatened injury to the Plaintiff 321 Studios.

## GENERAL ALLEGATIONS

**A.     The DVD Video Format**

20. DVD, an acronym that stands for "digital versatile disc," is a well-established technology that permits the storage and playback of video and films in a digital format. A DVD is a five-inch-wide plastic disk, similar in size and appearance to a "compact disc" or CD used for the storage of audio and computer data files. The DVD format is capable of storing the large amount of digital information required to hold a full-length motion picture film or other large amounts of digital data. Based on information and belief, a single DVD can hold approximately 4.75 gigabytes of information (equivalent to about 38 billion "bits" of digital information, stored as digital 1's and 0's).

21. The DVD format has been widely heralded as a high-quality successor to the VCR and videocassette tapes for the playback of video and movies. Because video images are

4
COMPLAINT FOR DECLARATORY RELIEF

stored on DVDs in a digital format, rather than the analog format used on videocassettes, DVDs permit the playback of video images with improved clarity and quality. DVDs can be played and viewed by the purchaser of a DVD either on a television equipped with a standalone DVD player or on a computer with a DVD-ROM drive and specialized playback software. The DVD format allows the producers and distributors of films to take advantage of additional features, including the addition of alternate soundtracks, interview clips, subtitles, alternate viewing configurations, and other menu-driven options.

22. Thousands of video titles, including feature-length motion pictures, television shows, documentaries, historical footage, and other film and video works, have been released in the DVD format. These DVDs are widely available for sale in retail stores and on the Internet. Individual DVDs containing movies can range in price from about $10 to $50.

23. With the widespread acceptance of the DVD format has come the recognition of certain problems inherent in the DVD format. The DVD itself is comprised of a layer of reflective material that actually holds the digital information, encased in clear plastic. A laser reads the very dense "tracks" encoded on the reflective material. The plastic disc is very sensitive to scratches and cracks on the playing surface. Because of the high density of the data stored on the DVD, even the slightest scratch or imperfection in the plastic surface of the disk can lead to problems playing the disk or retrieving the digital film and video information on the disk. Similarly, exposing the DVD disc to heat or light can easily damage the reflective surface or the plastic coating, leading to problems with the DVD or inability to play the disc.

**B.     The Contents Scramble System ("CSS")**

24. Most DVDs manufactured, distributed or sold by the Defendants are recorded onto the DVD in a scrambled format in which the data is encrypted in order to prevent unauthorized access to the data contained on the DVD. On information and belief, the system is called the "Contents Scramble System," or "CSS," and was developed by Matsushita Electric Industrial Co. Ltd. and Toshiba Corporation. Defendants have adopted CSS as a standard encryption technique to prevent access to DVD data. CSS works by scrambling the digital data that makes up each frame of video images. The CSS standard, as well as the licensing of the

electronic encryption "keys" necessary to play back DVDs, is administered by an organization known as the Copyright Control Authority (CCA). The CSS "keys" are licensed to the makers of DVD players and DVD software. A CSS-protected DVD can only be played back or viewed by DVD players or computer software which contain the "keys" licensed by the CCA, either directly or through subcontracts. When the CSS-encrypted DVD is placed in a licensed DVD player, the DVD player uses software and electronic decryption "keys" in order to unscramble the data and display the frames that make up the video images.

25. The use and administration of CSS as a mechanism for preventing viewing of or access to DVDs has no direct relation to the copyright status of any of the works placed on a DVD. Regardless whether CSS is used on a DVD, the work placed on the DVD may or may not be protected by copyright. For example, based on information and belief, many uncopyrighted or public-domain works are distributed on DVDs that are encrypted with CSS, and these public-domain works are not accessible without the licensed keys. Similarly, based on information and belief, some copyrighted works are distributed in the DVD format without CSS, which has no effect on the validity or enforceability of the copyright protections granted by United States law.

**C. The Creation and Availability of deCSS**

26. The software program known as "deCSS" is an open-source, freely available piece of software which descrambles DVD data encrypted by CSS, permitting the access and playback of legitimately-owned DVD videos on computers not equipped with the CSS encryption keys. On information and belief, one of the primary authors of deCSS is Jon Johanson, a 16-year-old Norwegian computer programmer. On information and belief, Mr. Johanson's goal in creating the software was to create a DVD player that would operate in the Linux operating system, and had the ability to play legitimately owned DVDs encrypted with CSS. Until deCSS was created, computer operators running the Linux operating system had no available player because no such software existed that contained the electronic decryption "keys" licensed by the CCA. On information and belief, the deCSS project was an effort to create a player that could run on the Linux operating system to play legitimately owned DVD films and video.

### D. 321 Studios' Sale of DVD Utilities and Instructions

27. Beginning in August of 2001, 321 Studios began distributing and selling over the Internet a package of documentation and software called "DVD Copy Plus." 321 Studios distributes this software through retail and Internet sales, including on its websites "www.321studios.com," "www.copymydvd.com," and "www.dvdcopyplus.com." DVD Copy Plus permits legal owners of DVDs to create video copies of the contents of those DVDs, converting the data into a format playable by any computer and most standard DVD players. As explicitly stated on 321 Studios' website, the purpose of DVD Copy Plus is to permit legitimate DVD owners to create archival copies of the DVDs they already own. A copy of pages from the 321 Studios website is attached as Exhibit A to this complaint and incorporated herein by reference. The data in the video files created by the DVD Copy Plus materials can be stored using a normal CD-ROM read-write drive. DVD Copy Plus does not create a copy of the DVD itself, but only a copy of some of the contents of the DVD in a different digital format. The quality of the digital video files created by DVD Copy Plus is lower than the original DVD video, but better than VHS videotape. DVD Copy Plus permits computer owners that have a CD read-write drive, but do not have a DVD read-write drive, to make archival backup copies on a CD that can be played on a home DVD player.

28. DVD Copy Plus cannot make a backup of the entire contents of the DVD, which may include special features such as alternate soundtracks, interview clips, subtitles, alternate viewing configurations, and other menu-driven options. Instead, DVD Copy Plus makes a backup copy of the film only, or of a bonus track only, and the backup CD will not have the menu-driven playback options of the original DVD.

29. DVD Copy Plus is comprised of detailed instructions on how to decode, store and rerecord video content that has been placed on a DVD, bundled with four freely-available software components. Because the software is freely-available elsewhere on the Internet, the value of DVD Copy Plus lies primarily in the detailed instructions which permit the use of the software. The value of DVD Copy Plus also depends on 321 Studios' customer service, which includes free technical support.

30. 321 Studios was founded by Robert Moore. Mr. Moore hoped to interest his son in the computer programming industry, and the father and son team decided to embark on an "e-commerce" business based on the distribution of instructions and documentation for creating backup copies of DVDs. In August of 2001, father and son started selling DVD Copy Plus over the Internet.

31. The use of DVD Copy Plus requires the use of a legal and authorized DVD player installed onto the user's personal computer.

32. On information and belief, it is unlikely that DVD Copy Plus has been used by many customers, if any, to make bootleg or otherwise illegitimate copies of DVDs for sale or distribution in a manner prohibited by the Copyright Act. First, it is impractical to use DVD Copy Plus as a method of mass-producing bootleg copies of DVDs. The process of accessing and making a backup of a DVD video takes between four to six hours, and the resulting copy is not identical to the original. As a practical matter, therefore, DVD Copy Plus is more suitable for use by the legitimate owners of DVDs to create archival backup copies. Second, the Internet website operated by 321 Studios, as well as the materials included with DVD Copy Plus, explain to users that the instructions and software must be used only to create legitimate backup copies of the contents of DVDs in a manner consistent with the copyright laws.

33. Purchasers of 321 Studios' DVD Copy Plus are informed that the software must not be used for improper uses, and instead should only be used to make backup copies for the personal use of the owner of the original DVD. DVD Copy Plus and its packaging materials contain the following language:

> RESPECT THE RIGHTS OF ARTISTS
>
> DVD Copy Pro allows you to make backup copies of movies you own or movies you've created. It is against the law to make or distribute reproductions of copyrighted material for most purposes other than your own use. This software is designed for you to make a backup copy for personal use only. We respect the rights of artists and ask you do to the same.

E.  **The Digital Millennium Copyright Act ("DMCA")**

34. With the passage of the Digital Millennium Copyright Act in 2000, Congress added a number of provisions to the Copyright Code, Title 17 of the United States Code. Among

the additional provisions are those purportedly aimed at the "circumvention of copyright protection systems." See 17 U.S.C. § 1201 et seq. These provisions state, "No person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(a). The provisions also states the following:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; [or] has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title ...

17 U.S.C. § 1201(a)(2).

35. These provisions of the DMCA have been widely criticized by legal scholars, lawmakers, and computer industry leaders. The problems with the DMCA stem from its vagueness, its interaction with other copyright laws, and its inconsistencies with the First Amendment protections on speech. The DMCA prohibits legitimate activity, including the fair use of copyrighted works.

F.    **321 Studios' Dispute with Defendants**

36. Based on information and belief, representatives of the Motion Picture Association of America have asked the FBI to investigate 321 Studios' distribution of DVD Copy Plus and have stated their belief that 321 Studios has violated the 1998 Digital Millennium Copyright Act. The Defendants' desire to shut down the distribution of DVD Copy Plus, and their allegations that such distribution violates the DMCA, are reflected in a March 11, 2002 article distributed by the Gannett News Service. The article specifically referred to the website operated by 321 Studios offering the DVD Copy Plus product, "www.copymydvd.com." This Internet website, "www.copymydvd.com," is a trade name and business name utilized by Plaintiff 321 Studios. A copy of this article is attached as Exhibit B to this Complaint and incorporated herein by reference.

37. Likewise, several of the Defendants have sued other individuals and operators of Internet websites that have distributed materials such as deCSS which permit access to DVD

video content. The specter of such litigation against 321 Studios has a chilling effect both on its business and on its First Amendment speech rights.

38. For the reasons stated above, 321 Studios seeks declaratory judgment that its distribution of DVD Copy Plus (1) is protected by the First Amendment, (2) does not violate the DMCA, (3) does not violate any other provisions of the United States Copyright Code, and (4) does not render 321 Studios liable for direct, contributory, or vicarious copyright infringement.

## CLAIMS FOR RELIEF

### Claim One
### (Declaratory Relief under the DMCA, 17 U.S.C. § 1201 et seq.)

39. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 38, inclusive.

40. Defendants individually, and under the auspices of the MPAA, have claimed that 321 Studios' distribution of DVD Copy Plus violates the DMCA provisions regarding circumvention of copyright protection systems.

41. Defendants' assertions and public claims threaten 321 Studios' ability to pursue its legitimate business by providing products and services that are not prohibited by the DMCA, and have a chilling effect on the free speech rights of 321 Studios.

42. An actual, present and justiciable controversy has arisen between plaintiff and Defendants concerning plaintiff's right to distribute and sell DVD Copy Plus.

43. Plaintiff 321 Studios seeks declaratory judgment from this Court that its activities in distributing DVD Copy Plus do not violate the provisions of the DMCA or, in the alternative, that these provisions are invalid in light of other copyright law provisions, these provisions are invalid because Congress exceeded its enumerated powers under Article 1, Section 8, of the U.S. Constitution, these provisions are unconstitutionally vague, and/or these provisions violate the First Amendment of the Constitution.

## Claim Two
### (Declaratory Relief, Direct, Vicarious, or Contributory Copyright Infringement, 17 U.S.C. § 101 et seq.)

44. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 43, inclusive.

45. Defendants individually, and under the auspices of the MPAA, have claimed that 321 Studios' distribution of DVD Copy Plus constitutes direct, vicarious, or contributory copyright infringement.

46. Defendants' assertions and claims threaten 321 Studios' ability to pursue and expand its legitimate business by providing products and services that are not prohibited by United States copyright statutes, and have a chilling effect on the free speech rights of 321 Studios.

47. An actual, present and justiciable controversy has arisen between plaintiff and Defendants concerning plaintiff's right to distribute and sell DVD Copy Plus.

48. Plaintiff 321 Studios seeks declaratory judgment from this Court stating that its activities in distributing DVD Copy Plus do not violate the provisions of United States Copyright Act on the grounds that DVD Copy Plus has substantial non-infringing uses, that the use of DVD Copy Plus constitutes fair use, and/or that the provisions of the Copyright Act, if interpreted to bar the distribution of DVD Copy Plus, violate the First Amendment of the Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 321 Studios accordingly requests that the Court:

1. Enter judgment according to the declaratory relief sought;

2. Award Plaintiff its costs in this action; and

3. Enter such other further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Plaintiff 321 Studios hereby demands a jury trial on all issues so triable.

Dated: April 22, 2002

KEKER & VAN NEST, LLP

By: _____
DARALYN J. DURIE
Attorneys for Plaintiff
321 STUDIOS

**EXHIBIT A**



## Copyright Information

**CopyMyDVD Legal**

© 2002 CopyMyDVD, All rights reserved

All web site design, text, graphics, the selection and arrangement thereof, and software are the copyrighted works of CopyMyDVD., © 2002. All Rights Reserved.

**TRADEMARKS:**

CopyMyDVD, the CopyMyDVD logo, and the CopyMyDVD tag line are trademarks of CopyMyDVD, Inc. which may be registered in some jurisdictions. All other trademarks used are owned by their respective owners.

Windows is a registered trademark of Microsoft Corporation in the U.S. and other countries used under license. Microsoft, Windows, and the Windows logo are registered trademarks of Microsoft Corporation used under license. Windows® 95 is a registered trademark of Microsoft Corporation in the U.S. and other countries used under license. The Windows 95 logo is a registered trademark of Microsoft Corporation used under license. Windows NT logo is a trademark of Microsoft Corporation used under license

**DVD-RECORDING SOFTWARE DISCLAIMER:**

THIS SOFTWARE PACKAGE AND INSTRUCTION GUIDE SHOULD ONLY BE USED TO CREATE A BACK-UP COPY OF DVD'S YOU HAVE CREATED AND WHICH YOU OWN ALL RIGHTS, INTERESTS AND LEGAL TITLE. THIS PACKAGE IS INTENDED FOR PERSONAL USE ONLY. USING THIS SOFTWARE PACKAGE TO CREATE UNAUTHORIZED COPIES OR DERIVATIVES OF WORKS PROTECTED UNDER UNITED STATES LAW IS STRICTLY PROHIBITED. WE DO NOT ENCOURAGE OR ENDORSE BREACH OF COPYRIGHT LAW. BY PURCHASING AND USING OUR SOFTWARE AND INSTRUCTION MANUAL, YOU REPRESENT AND WARRANT THAT YOUR USE OF OUR PRODUCT WILL NOT VIOLATE LOCAL, STATE, FEDERAL AND/OR INTERNATIONAL LAWS AND THAT YOU OWN ALL INTERESTED RIGHTS AND LEGAL TITLE IN ALL MATERIALS AND CONTENT YOU COPY

WITH OUR PRODUCT.

HOME | PRODUCTS | CONTACT US | FAQ | TESTMONIALS | ORDER | AFFILIATES

Copyright 2002 CopyMyDVD.com. All rights reserved.

PRIVACY | TERMS OF USE | COPYRIGHT

**EXHIBIT B**

3/11/02 GANNETTNS                                                                Page 1
3/11/02 Gannett News Serv. (Pg. Unavail. Online)
2002 WL 5256768
(Publication page references are not available for this document.)

Gannett News Service
Copyright 2002

Monday, March 11, 2002

Film industry takes on DVD duping
GREG WRIGHT
Gannett News Service

   Movie studios want federal authorities to shutter Web sites that sell allegedly illegal software that lets consumers copy DVDs, but legal experts said closing the sites could be easier said than done.

   "At the end of the day ... it's going to be either the courts or even Congress that may reconsider this issue and have the last word," said professor Peter Jaszi, an Internet and copyright law expert at American University in Washington, D.C.

   Motion Picture Association of America officials asked the FBI and Justice Department last month to investigate several Web sites that sell the software for around $40, said Ken Jacobsen, the association's worldwide anti-piracy director in Encino, Calif.

   The association wouldn't identify the sites it's targeting, but said they began e-mail advertising campaigns in December.

   The Web sites violate the 1998 Digital Millennium Copyright Act, according to Jacobsen. Under that law, studios are allowed to put anti-piracy coding on DVDs.

   Sites stir up controversy

   Web sites, including the site of hacker quarterly 2600 (www.2600.org), have distributed the De-Content Scramble System or DeCSS, which cracks DVD copy protection, since 1999, when it was first introduced by a 16-year-old hacker from Norway. Some of these sites also provide hands-on instructions for less-technical PC users, which walk them through the process of breaking the DVD code, transferring huge digital video and audio files to a computer hard drive and burning a duplicate onto blank DVDs or CDs.

   Companies such as CopyMy DVD.com and DVD Wizard sell software that makes DVD duplication easy. "Save money and never have to buy a DVD again," reads an advertisement on the DVD Wizard site.

   Motion Picture Association staffers have tried several DVD

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

copying products advertised on the Web and they work, Jacobsen said, adding that officials at companies who are selling the software could be liable for up to $500,000 in fines and a five-year prison sentence under the 1998 law.

Differing legal interpretations

But officials at one site, St. Louis-based CopyMyDVD.com, said they are doing nothing wrong. Consumers have the right to copy their DVDs for personal use under the 1992 Home Audio Recording Act, CopyMyDVD spokesman Dion Cini said.

Cini also said duplicated DVDs are inferior to the original copies in terms of image and sound quality so they should be exempt from laws protecting DVDs.

"We are not making an exact replica of a DVD," he said. "It's not a complete and legitimate product."

The argument over the right to copy DVDs is a legal minefield, American University's Jaszi said. If the software is being sold primarily to rip DVDs, the Motion Picture Association has a good argument, he said.

On the other hand, some groups are challenging the Digital Millennium Copyright Act, claiming it may infringe on First Amendment rights and the Home Audio Recording Act, he said.

"In the meantime there is going to be a lot of litigation around claims of this kind," Jaszi said.

---- INDEX REFERENCES ----

NAMED PERSON:     JASZI, PETER; JACOBSEN, KEN

ORGANIZATION:     MOTION PICTURE ASSOCIATION OF AMERICA

NEWS SUBJECT:     English language content; Corporate/Industrial News; Movies; Arts & Entertainment; Arts/Entertainment; Political/General News (ENGL CCAT GMOVIE ART GENT GCAT)

MARKET SECTOR:    Technology; Consumer Cyclical (TEC CYC)

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

3/11/02 GANNETTNS                                                              Page 3
3/11/02 Gannett News Serv. (Pg. Unavail. Online)
2002 WL 5256768
**(Publication page references are not available for this document.)**

INDUSTRY:        Software; Advertising; Film, Television & Music; All Entertainment & Leisure; Recreational Products & Services ($OF ADV MOV ENT REC)


PRODUCT:         Computer Hardware; Computer Software; Media; Leisure (DCO DCS DME DLE)


Word Count: 488

3/11/02 GANNETTNS (No Page)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works