| | |
|---|---|
| 1 | KEKER & VAN NEST, LLP |
| | MICHAEL H. PAGE - #154913 |
| 2 | DARALYN J. DURIE - #169825 |
| | LLOYD A. FARNHAM - #202231 |
| 3 | CLEMENT S. ROBERTS - #209203 |
| | 710 Sansome Street |
| 4 | San Francisco, CA 94111-1704 |
| | Telephone: (415) 391-5400 |
| 5 | Facsimile: (415) 397-7188 |
| 6 | Attorneys for Plaintiff and Counterclaim Defendants |
| | 321 STUDIOS |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 321 STUDIOS, also known as 321 Studio, LLC, | Case No. C 02-1955 SI |
| Plaintiff, | **COUNTERCLAIM DEFENDANT VICTOR MATTISON'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| METRO-GOLDWYN-MAYER STUDIOS INC.; TRISTAR PICTURES, INC.; COLUMBIA PICTURES INDUSTRIES, INC.; SONY PICTURES ENTERTAINMENT, INC.; TIME WARNER ENTERTAINMENT COMPANY L.P.; DISNEY ENTERPRISES, INC.; UNIVERSAL CITY STUDIOS, INC.; THE SAUL ZAENTZ COMPANY, | Date: February 28, 2003<br>Time: 9:00 a.m.<br>Dept: Courtroom 10, 19th Floor<br><br>Judge: The Honorable Susan Illston |
| Defendants, | |
| METRO-GOLDWYN-MAYER STUDIOS INC.; TRISTAR PICTURES, INC.; COLUMBIA PICTURES INDUSTRIES, INC.; TIME WARNER ENTERTAINMENT COMPANY L.P.; DISNEY ENTERPRISES, INC.; UNIVERSAL CITY STUDIOS, LLP. formerly known as UNIVERSAL CITY STUDIOS, INC.; and THE SAUL ZAENTZ COMPANY, | |
| Counterclaimants, | |

**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants'
Counterclaims; Memorandum Of Points And Authorities In Support Thereof
Case No. C 02- 1955 SI**

304116.01

|   |   |
|---|---|
| | v. |
| | 321 STUDIOS, also known as 321 Studio, LLC; ROBERT MOORE, an individual; ROBERT SEMAAN, an individual; and VICTOR MATTISON, an individual, |
| | Counterclaim Defendants. |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 28, 2003 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston, United States District Judge, in Courtroom 10 on the 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Counterclaim Defendant Victor Mattison will move and hereby does move this Court for an order dismissing the counterclaims against him contained in the Answer to the First Amended Complaint and Counterclaim under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all pleadings and records on file in this action, and any other argument and evidence presented to this Court at or before the hearing on this Motion.

DATED:  January 9, 2003                                    Respectfully submitted,

KEKER & VAN NEST, LLP


By: _____
DARALYN J. DURIE
Attorneys for Plaintiffs 321 STUDIOS
and Counterclaim Defendants 321
STUDIOS, ROBERT MOORE, ROBERT
SEMAAN, and VICTOR MATTISON

-1-
**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants'
Counterclaims; Memorandum Of Points And Authorities In Support Thereof
Case No. C 02- 1955 SI**

304116.01

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Counterclaim Defendant Victor Mattison ("Mattison") is a passive investor in 321 Studios. He is neither an officer nor a director of 321 Studios, has no organizational nor managerial responsibility and holds no stock in his own name. Mr. Mattison's only connection to 321 Studios is that he is a part owner of a company which, in turn, owns stock in 321 Studios.

The Counterclaimants have not alleged otherwise. Indeed, the Counterclaimants have alleged *only one fact* about Mr. Mattison—that he owns twenty-five percent (25%) of 321 Studios' stock. All of the Counterclaimants' other allegations concerning Mr. Mattison are legal conclusions regarding his and the other Counterclaim Defendants' supposed collective liability under the Digital Millennium Copyright Act ("DMCA").

The DMCA does not create personal liability for passive investors like Mr. Mattison. Instead, the DMCA limits liability to those who sell certain prohibited devices, and those who "act in concert" with such sellers. See 17 U.S.C. Section 1201(a)(2)(C). The counterclaim fails to allege that Mr. Mattison personally sells anything. Thus, *even if* 321 Studios is found to have violated the DMCA, Mr. Mattison *cannot* be held liable unless he is alleged (and found) to have "acted in concert" with 321 Studios. Because the Counterclaimants have not alleged *any facts* giving rise to the inference that Mr. Mattison acted in concert with 321 Studios, the claims against Mr. Mattison must be dismissed.

## II. RELEVANT ALLEGATIONS

The Defendants' Answer to First Amended Complaint and Counterclaims pleads only one specific fact regarding Mr. Mattison:

> 66. Counterclaimants are informed and believe, and on that basis aver, that Counterclaim Defendant Victor Mattison ("Mattison") is and at all times relevant hereto was a 25% owner of 321 Studios.

All of the Counterclaimant's other allegations regarding Mr. Mattison are both conclusory and undifferentiated with respect to the other Counterclaim Defendants. For example in ¶ 68 of their Answer and Counterclaims, the Defendants allege that:

-2-
**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants' Counterclaims; Memorandum Of Points And Authorities In Support Thereof**
**Case No. C 02- 1955 SI**

304116.01

> Each of the counterclaim Defendants is, and at all times mentioned herein was, a party to the unlawful activities complained of herein, and has conspired with and/or acted in concert or combination with each of the other Counterclaim Defendants and/or has aided and abetted such other Counterclaim Defendants and/or has acted as an agent for each of the other Counterclaim Defendants with respect to the actions and matters described in this Counterclaim and/or has controlled each of the other counterclaim Defendants and the infringing conduct herein alleged.

The other allegations in Defendant's Answer and Counterclaims are virtually identical—consisting of boilerplate recitations of the legal standards for liability without attempting to differentiate among the defendants or to allege specific facts regarding their individual conduct.

### III.   ARGUMENT

**A.   The DMCA Only Creates Liability For Persons "Acting In Concert" With Sellers Or Marketers Of Certain Categories Of Devices**

The DMCA creates liability for individuals who market or sell certain categories of devices and for persons "acting in concert" with such marketers or sellers.  See 17 U.S.C. § 1201(a)(2)(C).  While no Court has yet interpreted the precise scope of the phrase "acting in concert" in the context of the DMCA, that phrase cannot reasonably be read to include passive investors.

First, nothing in the DMCA indicates an intent to enlarge the traditional scope of vicarious liability, much less to make all stockholders personally liable (or subject to suit) for a company's alleged violations of the DMCA.  For example, with respect to copyright infringement, the DMCA *explicitly* says that it is intended neither to enlarge nor diminish the traditional scope of vicarious and contributory liability.  See 17 U.S.C. § 1201(c)(2) ("Nothing in this section shall enlarge or diminish vicarious or contributory liability for copyright infringement in connection with any technology, product, service, device, component, or part thereof.").  In this context, it would be anomalous to interpret the words "acting in concert" to extend vicarious liability to a group, such as stockholders, who are generally immune from such claims.

Stockholders are generally immune from such claims under copyright law because—except where they are also officers, directors or otherwise control the corporation—they neither

-3-
**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants'
Counterclaims; Memorandum Of Points And Authorities In Support Thereof
Case No. C 02- 1955 SI**

304116.01

1  directly supervise the allegedly infringing activity nor personally assist in that activity.  See
2  A&M Records v. Napster, Inc., 239 F.3d 1004, 1019 (9th Cir. 2001) ("liability [for contributory
3  infringement] exists if the defendant engages in 'personal conduct that encourages or assists the
4  infringement.'") (internal citations omitted); Id. at 1022 (vicarious liability only exists where "a
5  defendant 'has the right and ability to supervise the infringing activity …'") (internal citations
6  omitted); Nimmer on Copyright § 12.4[A][1] (for vicarious liability "the defendant must possess
7  the right and ability to supervise the infringing conduct").  Thus, under copyright law, a person
8  cannot be found to be liable for vicarious or contributory infringement merely because they are a
9  stockholder in an infringing corporation.

10  Second, the courts have elsewhere concluded that "acting in concert" connotes a degree
11  of participation greater than mere beneficial ownership of stock.  C.f. Kappas v. United States,
12  578 F. Supp. 1435, 1441 (C.D. Cal. 1983) (two individual were "acting in concert" for purposes
13  of non-payment of taxes where both had "'significant control' over the finances of the
14  company"); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 840 (9th Cir. 1999) (a
15  private defendant was deemed to be "acting in concert" with the state when it actively sought the
16  state's help in enforcing discriminatory bylaws).

17  Because there is no legal or textual justification for interpreting the DMCA as extending
18  liability to passive investors or stockholders, the claims against Mr. Mattison cannot survive
19  unless Counterclaimants have alleged facts giving rise to a reasonable inference that
20  Mr. Mattison played an active role in 321 Studio's affairs.

21  **B.   The Counterclaimants Have Not Alleged Facts Supporting The Inference That Mr. Mattison "Acted In Concert" With 321 Studios**
22  
23  In order to allege facts sufficient to survive a motion to dismiss, a claimant must do more
24  than assert legal conclusions as if they were facts.  See Epstein v. Washington Energy Co.,
25  83 F.3d 1136, 1140 (9th Cir. 1999) ("conclusory allegations of law and unwarranted inferences
26  are insufficient to defeat a motion to dismiss for failure to state a claim."); Robertson v. Dean
27  Witter Reynolds, Co., 749 F.2d 530, 534 (9th Cir. 1984) ("A complaint may be dismissed as a
28  

-4-
**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants'
Counterclaims; Memorandum Of Points And Authorities In Support Thereof
Case No. C 02- 1955 SI**

304116.01

1  matter of law for one of two reasons: (1) lack of a cognizable legal theory, or (2) insufficient
2  facts under a cognizable legal theory.")

3  This is so because allegations of law, *even when pled as facts*, are not entitled to the same
4  weight and credit as factual allegations. See Western Mining Council v. Watt, 643 F.2d 618, 624
5  (9th Cir., 1981) (while courts "generally assume the factual allegations [in a complaint] to be
6  true . . . [they] do not, however, necessarily assume the truth of legal conclusions merely because
7  they are cast in the form of factual allegations."); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44
8  (1st Cir. 1991) (on a 12(b)(6) motion, a court "need not credit bald assertions, periphrastic
9  circumlocutions, unsubstantiated conclusions, or outright vituperation").

10  Because virtually all of the Counterclaimants' allegations regarding Mr. Mattison consist
11  of purely legal conclusions, the Counterclaimants cannot rely on them to survive this motion.
12  Instead, the claims against Mr. Mattison must survive, if at all, based on the reasonable
13  inferences that flow from Counterclaimants' only specific factual allegation about
14  Mr. Mattison—that he owns twenty-five percent (25%) of 321 Studios' stock. See Answer and
15  Counterclaims ¶ 66. But Mr. Mattison's alleged ownership of a percentage of 321 Studios' stock
16  does not provide *any* inferential support for the proposition that Mr. Mattison takes an active role
17  in 321 Studios' affairs or that he has "acted in concert" with anyone at 321 Studios.

18  Nor can the Counterclaimants overcome this deficit by pointing to their numerous
19  conclusory allegations to the effect that "[e]ach of the counterclaim Defendants is, and at all
20  times mentioned herein was, a party to the unlawful activities complained of herein." Answer
21  and Counterclaims ¶ 68. Such allegations are nothing more than legal conclusions regarding
22  liability stated as if they were facts—exactly the sort of allegations that *cannot* be relied upon to
23  survive a motion to dismiss. See Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th
24  Cir. 1999) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a
25  motion to dismiss for failure to state a claim.") To hold otherwise would, for example, allow a
26  plaintiff who alleges that Intel has violated the DMCA to sue (in his or her personal capacity)
27  *anyone* who owns Intel stock, and to survive a motion to dismiss based on a single allegation of
28

-5-
**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants'
Counterclaims; Memorandum Of Points And Authorities In Support Thereof
Case No. C 02- 1955 SI**

304116.01

such ownership. Even the liberalized federal pleading rules cannot reasonably be construed to allow such a result.

### IV. CONCLUSION

For the foregoing reasons, the counterclaims against Mr. Mattison should be dismissed with prejudice.

DATED: January 9, 2003

Respectfully submitted,

KEKER & VAN NEST, LLP

By: _____
DARALYN J. DURIE
Attorneys for Plaintiffs 321 STUDIOS
and Counterclaim Defendants 321
STUDIOS, ROBERT MOORE, ROBERT
SEMAAN, and VICTOR MATTISON

-6-
**Counterclaim Defendant Victor Mattison's Notice Of Motion And Motion To Dismiss Defendants'
Counterclaims; Memorandum Of Points And Authorities In Support Thereof
Case No. C 02- 1955 SI**

304116.01